**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CAMPBELL, Spruce** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.:** |
| ) | |
| **NOEM, Kristi et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND/OR 5 U.S.C. § 705 STAY**

1

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………………………3

**A. INTRODUCTION**………………………………………………………………………5

**B. FACTUAL AND PROCEDURAL BACKGROUND**………………………………………..7

**C. ARGUMENT**………………………………………………………………….........9

    I.    Plaintiff is Likely to Succeed on the Merits……………………………...10

    II.    Plaintiff is Suffering, and Will Continue to Suffer, Immediate, Irreparable Harm as a Result of Defendants' Arbitrary and Capricious Act……………………………………………………………………..12

    III.    The Balance of Equities and the Public Interest Both Favor an Injunction………………………………………………………………...13

    IV.    This Court Should Not Require Bond Under FRCP 65(c)…………………..14, 16

**D.    RELIEF REQUESTED**……………………………………………………………...16

**E.    CONCLUSION**……………………………………………………………………...17

# TABLE OF AUTHORITIES

**Cases**

*Boston Parent Coalition for Academic Excellence Corp. v. School Comm. of City of Boston*, 996 F.3d 37 (1st Cir. 2021)……………………………………………………………..10

*Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, and Packers*, 679 F.2d 978 (1st Cir. 1982)……………………………………..15

*Fang v. Dir. United States Immigr. & Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019)……11

*Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022)………………………………………………14

*Massachusetts v. Nat'l Insts. of Health*, 2025 WL 702163 (D. Mass. 2025)….………..……….12

*Nken v. Holder*, 556 U.S. 418 (2009)……………………………………………………..9, 10, 13

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.* (Ross-Simons II), 217 F.3d 8 (1st Cir. 2000)..……………………………………………………………………………………………12

*Seafreeze Shoreside, Inc. v. Dept. of Interior*, 2023 WL 3660689 (D. Mass. May 25, 2023)……………………………………………………………………………………..9, 10

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1 (1st Cir. 2012)…………….10

*Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068 (S.D. Cal. 2019)………...9

*Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26 (1st Cir. 2011)...9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)………………………………………12

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 701 *et seq*……………………………………*passim*
5 U.S.C. § 705……………………………………………………………………………*passim*
I.N.A. §221(i)……………………………………………………………………………..6, 7, 8
I.N.A. §212(d)(3)………………………………………………………………………………...11
I.N.A. §212(d)(4)………………………………………………………………………………...11
8 U.S.C. §212(a)(9)(B)……………………………………………………………………….6, 8

**Rules**

Fed. R. Civ. Pro. 65(a)…………………………………………………………………………..17
Fed. R. Civ. Pro. 65(b)……………………………………………………………………….9, 17
Fed. R. Civ. Pro. Rule 65(c)……...……………………………………………………………..13, 17
8 C.F.R. §214.1(d)...……………………………………………………………………………13, 14
8 C.F.R. §214.2(f)………………………………………………………………………………10
8 C.F.R. §214.1(e)-(g)...………………………………………………………………………..10

**Other Authorities**

Document 13, Order, *Liu v. Noem, et al.*, No. 1:25-cv-00133 at \*5 (D. N.H. April 10, 2025)……………………………………………………………………………………….….14

Erin Adler, Jp Lawrence and Jenny Berg, Minnesota's international students fear deportation, being singled out for minor infractions — even a speeding ticket, (last accessed April 13, 2025), https://www.startribune.com/minnesota-international-students-fear-facing-deportation-singled-out-for-minor-infractions-even-a-speeding-ticket/601324863........................................................8

ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf………………………10, 12

SEVIS Help Hub—Terminate a Student, Dep't of Homeland Security, (last accessed April 11, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student……………………………………………………………….6, 8

## A.  INTRODUCTION

Beginning in early April of 2025, the Trump Administration, through Defendants, abruptly advised hundreds of foreign students studying at U.S. universities that their student visas had been revoked, and without any notice, records within the Student Exchange and Visitor Information System ("SEVIS") were also terminated. In most cases, Defendants terminated students' SEVIS records with no lawful basis to support this action. Students with terminated SEVIS records, some just weeks from graduation, faced immediate invalidation of their legal immigration status and the possibility of unlawful presence, detention, deportation, and future visa restrictions.

Plaintiff Spruce Campbell ("Plaintiff"), a full-time student and junior at the Massachusetts Institute of Technology ("MIT") with an anticipated graduation date of May 2026, is one such victim of Defendants' unlawful actions. On April 8, 2025, Plaintiff was informally advised by his Designated School Official ("DSO") via Zoom call that despite maintaining a full course load and otherwise wholly complying with the terms of his F-1 status, his SEVIS record had been terminated by the Department of Homeland Security. Plaintiff received no advance warning or any formal notification from Defendants. At no point have Defendants explained in what manner Plaintiff failed to maintain his F-1 visa status.

The same day, April 8, 2025, Plaintiff received a letter from the U.S. Department of State informing Plaintiff that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 18-May-27 has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended." *See* Pl.'s Ex. 1, Email from U.S. Department of State dated April 8, 2025.

The email further told Mr. Campbell that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." *See* Pl.'s Ex. 1.

Defendants have not provided Plaintiff with a clear timeline for his departure. However, an F-1 visa holder whose SEVIS record has been terminated for "any violation of status" must leave "immediately," with "no grace period."[1] Plaintiff is therefore at imminent risk of accruing unlawful presence, and his ability to complete his four-year degree therefore rests at Defendants' caprice. Further, any unlawful presence that Plaintiff might accumulate in the United States, 8 U.S.C. §212(a)(9)(B), could preclude the future grant of a visa, even if he were to succeed on the merits of the present litigation.

Based on the imminent risk of unlawful presence, detention, and deportation that he faces following termination of his SEVIS record, Plaintiff seeks emergency relief from this Court. Given the grave harm that Defendant's actions will inflict on Plaintiff should the termination be permitted to stand, this Court should provide immediate relief in the form of a temporary restraining order, preliminary injunction, and/or stay under 5 U.S.C. § 705 (i) enjoining Defendants from terminating Plaintiff's F-1 student status under the SEVIS system, (ii) requiring Defendants to set aside their termination determination, and (iii) enjoining Defendants from

---

[1] *See* SEVIS Help Hub—Terminate a Student, Dep't of Homeland Security, (last accessed April 18, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student ("Termination for any violation of status: **No grace period.** If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately.") (emphasis in original).

6

issuing a Notice to Appear in Removal Proceedings against Plaintiff and/or detaining Plaintiff pursuant to his immigration status.

## B. FACTUAL BACKGROUND

Mr. Campbell, an MIT junior studying quantum physics, experimental physics, and the application of physical intuition to deep learning, has regularly entered and departed the United States pursuant to F-1 student visa classification without issue. He most recently entered the country on January 12, 2025.

On April 8, 2025, Plaintiff received an email from the Department of State, informing him that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 18-May-27 has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended." Defendants did not specify what relevant "additional information" had become available. Although Plaintiff was cited in 2023 on suspicion of allegedly entering a secured construction site with a friend, these charges were withdrawn in exchange for completion of all requirements of the Middlesex District Attorney's Office Young Adult Diversion Program (YADP). Plaintiff has no criminal record.

On the same day, April 8, 2025, Plaintiff was informally advised by his Designated School Official ("DSO") at MIT that his SEVIS record had been terminated by the Department of Homeland Security for "failure to maintain status." Plaintiff, who has maintained a full course load and otherwise fully complied with the terms of his F-1 status, received no advance warning or any other formal notification from DHS as to this alleged failure to maintain status or their intent to terminate his SEVIS record. Plaintiff has received no formal SEVIS termination notice from ICE or any other agency.

As termination of SEVIS "for any violation of status" entails no grace period and requires

students to leave "immediately,"[2] Plaintiff may be at imminent risk of accumulating unlawful presence due to Defendant's arbitrary, capricious, and unlawful termination of his SEVIS record on this basis. 8 U.S.C. §212(a)(9)(B). Moreover, as the government is alleging that Plaintiff is out of status and subject to removal, he is also at risk of detention at Immigration and Customs Enforcement's discretion. Indeed, on the same day, April 8, 2025, Plaintiff received an email from the U.S. Department of State informing him that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date J10-JAN-2028 has been revoked under Section 221(i)." *See* Pl.'s Ex. 1. The email further told Mr. Campbell that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." *See* Pl.'s Ex. 1.

Plaintiff is unable to seek reinstatement of his SEVIS record as a potential remedy. Seeking reinstatement would further complicate Defendants' unlawful action, as Plaintiff was at no point out of status, nor did he violate his status, but would be required to admit that he was or did in order to make a reinstatement request. Given that Defendants' termination of Plaintiff's SEVIS record was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, Plaintiff's interests would not be served by seeking reinstatement.

### C. ARGUMENT

The "primary difference" between a preliminary injunction and a TRO is "duration: preliminary injunctions remain in force throughout the litigation, while TROs, which are

---

[2] *See id.*

traditionally entered on an *ex parte* basis, are limited to 28 days." *See Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068, 1072 (S.D. Cal. 2019) (citing Fed. R. Civ. Pro. 65(b)(2)). Similarly, the APA also authorizes courts to "postpone the effective date of an agency action or to preserve status or rights pending conclusion" of APA proceedings, "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.

The substantive standard for granting a temporary restraining order, preliminary injunction, or administrative stay pursuant to 5 U.S.C. § 705 is effectively the same. *See Seafreeze Shoreside, Inc. v. Dept. of Interior*, 2023 WL 3660689, at *3 (D. Mass. May 25, 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435–36 (2009)) (describing "substantial overlap" between the analysis for an APA stay and a preliminary injunction); *Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) ("In evaluating a motion for a TRO, the Court considers the same four factors that apply to a motion for preliminary injunction."). Courts weight four factors in considering a motion for a TRO, preliminary injunction or APA stay : "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012). The first two factors are the most critical. *SeaFreeze*, 2023 WL 3660689, at *3 (citing *Boston Parent Coalition for Academic Excellence Corp. v. School Comm. of City of Boston*, 996 F.3d 37, 47 (1st Cir. 2021) (quoting <u>Nken</u>, 556 U.S. at 129)). When the government is the party opposing the injunction, the final two factors merge. *Nken*, 556 U.S. at 435–36.

As Plaintiff is likely to succeed on the merits of his claim and will suffer irreparable harm in the absence of this Court's intervention, Defendants will suffer little to no hardship in contrast with that endured by Plaintiff, and Plaintiff's continued presence in the United States as a gifted MIT student with no history of criminal convictions is evidently not against the public interest, this Court should order a TRO, preliminary injunction, or APA stay.

### I.   Plaintiff is Likely to Succeed on the Merits.

As to factor (1), Plaintiff is likely to succeed on the merits of his claim. ICE policy specifically states that "visa revocation is not, in itself, cause for termination of Plaintiff's SEVIS record."[3] Rather, DHS regulations acknowledge two distinct ways that a student's SEVIS record can be lawfully terminated, namely: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status." 8 C.F.R. §§ 214.2(f); 8 C.F.R. §214.1(d). Failure to maintain status involves circumstances where an F-1 student visa holder demonstrably fails to comply with the requirements of the visa under 8 C.F.R. §§ 214.2(f) (i.e., failing to maintain a full course of study) or otherwise violates the terms of their student visa as outlined further in 8 C.F.R. §§ 214.1(e)-(g) (i.e. unauthorized employment, providing false information to a government agency, or being *convicted* of a crime of violence with a potential sentence of more than a year) (emphasis added).

Termination of nonimmigrant visa status by DHS involves circumstances limited to those outlined in 8 C.F.R. §214.1(d), namely: (1) a previously granted waiver under INA §212(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security,

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

10

diplomatic, or public safety reasons for termination. Indeed, neither DHS nor ICE can unilaterally terminate an F-1 student visa at their discretion. *See Fang v. Dir. United States Immigr. & Customs Enforcement*, 935 F.3d 172, 185 fn. 100 (3d Cir. 2019).

Here, on April 8, 2025, Mr. Campbell received a communication that his F-1 visa had been terminated by the Department of State. *See* Pl.'s Ex. 1. On April 8, 2025, MIT informed him that his SEVIS record had apparently been terminated for "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Neither Mr. Campbell nor MIT received a formal communication from Immigration and Customs Enforcement (ICE) regarding the fact of the termination, let alone the basis for the apparent termination. Mr. Campbell has consistently maintained his F-1 visa status, and at no point have Defendants explained how he has not. Defendants are precluded from terminating Plaintiff's SEVIS status based on visa revocation alone.[4]

Defendants have acted in defiance of all existing protections afforded to nonimmigrant visa holders. As a result of this unlawful and baseless revocation of his SEVIS record, Plaintiff may be required to leave "immediately," with "no grace period." If he does not, he risks being detained, placed in removal proceedings, and potentially deported.

As the revocation of Plaintiff's visa and termination of his SEVIS record are demonstrably arbitrary, capricious, and generally without legal basis, Plaintiff is likely to succeed on the merits of his APA claim.

**II.     Plaintiff is Suffering, and Will Continue to Suffer, Immediate, Irreparable Harm as a Result of Defendants' Arbitrary and Capricious Act.**

As to Factor 2, the harm that Plaintiff is suffering and would continue to suffer in the

---

[4] *Id.*

absence of an injunction, TRO, or stay by this Court is substantial and irreparable. A Plaintiff must show more than just a "possibility" of irreparable harm. *See Massachusetts v. Nat'l Insts. of Health*, 2025 WL 702163, at *28 (D. Mass. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 (2008)). "In determining if the harm is irreparable, "[i]t is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'"" *Id.* (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.* (Ross-Simons II), 217 F.3d 8, 13 (1st Cir. 2000)) (internal citations omitted).

The losses that Plaintiff stands to suffer in the absence of relief from this Court constitute irreparable harm for which an award of money damages would not be sufficient. At the time that Plaintiff received informal notice that his SEVIS record had been terminated, approximately one year remained until his projected May 2026 graduation from MIT. Beyond his considerable financial investment, Plaintiff has also invested three years and substantial effort into achieving his degree. A degree from MIT, an incomparable institution that represents the very top of Plaintiff's niche fields of study, is not interchangeable and cannot be replaced with a degree from another institution. Termination of Plaintiff's SEVIS record also precludes his use of Optional Practical Training ("OPT"), a period during which students with F-1 status are permitted by United States Citizenship and Immigration Services ("USCIS") to work towards getting practical training related to their education.[5]

Plaintiff has been provided with no guidance from Defendants as to his current status or

---

[5] *See* SEVIS Help Hub—Terminate a Student, Dep't of Homeland Security, (last accessed April 11, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student ("When an F-1/M-1 SEVIS record is terminated, the following happens: Student loses all on- and/or off-campus employment authorization").

next steps. Should Plaintiff be forced to depart the country immediately pursuant to Defendant's arbitrary and capricious termination of his SEVIS record, he is at imminent risk of being unable to complete his degree at MIT.

Further, Plaintiff is at immediate risk of accumulating unlawful presence in the United States in the absence of an injunction. Beyond the immediate and significant legal consequences of unlawful presence, including risk of detention and deportation by ICE, any accumulated unlawful presence could preclude or substantially delay the future grant of an F-1 visa or other nonimmigrant visa. Finally, these events in their totality have caused and continue to cause Plaintiff to suffer substantial emotional and psychological distress.

As the harm to Plaintiff caused by Defendants' arbitrary and capricious act is substantial, immediate, and irreparable, a preliminary injunction, TRO, or stay under the APA is an appropriate remedy.

### III. The Balance of Equities and the Public Interest Both Favor an Injunction.

When the government is the party opposing an injunction, the final two factors—whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs and the effect, if any, on the public interest—merge. *Nken*, 556 U.S. at 435–36. An injunction promotes and protects the public interest by avoiding the myriad harms that Defendants' lawlessness will bring and indeed has already brought. There is "no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

Defendants would endure little hardship, and the public no ill effect, as a result of an injunction, TRO, or stay allowing a gifted MIT student to temporarily remain in the country during the pendency of this litigation. Mr. Campbell is not a danger to others. He has no criminal

record, as his single arrest for a nonviolent crime was ultimately withdrawn. He is a successful and productive student who stands to contribute enormously to his fields of study. In contrast, Mr. Campbell would potentially suffer the loss of years of work and substantial economic investment into his degree. Finally, given that Defendants' actions are evidently unlawful, the public interest—including the interests of the hundreds if not thousands of other F-1 visa holders in the same situation as Plaintiff—[6]would stand to benefit from this Court's temporary intervention.

### IV.     This Court Should Not Require Bond Under Fed. R. Civ. Pro. 65(c).

This Court should exercise its inherent discretion to waive the bond requirement embedded in Fed. R. Civ. Pro. 65(c). There is "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond." *Pineda v. Skinner Services, Inc.*, 22 F.4th 47, 57 (D. Mass 2021) (citing *Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991)). A Court can consider the possible harm to the enjoined party if the order is unlawful, the hardship that bond would impose on the applicant, the likelihood of the applicant's success on the merits, the applicant's ability to post a substantial bond or surety, and the possible adverse impact that requiring substantial security might have on the enforcement of rights created by remedial legislation. *See Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, and Packers*, 679 F.2d 978, 999-1001 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984). As to the last element,

---

[6] *See, e.g.,* Document 13, Order, *Liu v. Noem, et al.*, No. 1:25-cv-00133 at *5 (D. N.H. April 10, 2025) (granting a TRO (i) enjoining Defendants from terminating Plaintiff's F-1 student status under the SEVIS system and (ii) requiring Defendants to set aside their termination determination in order to avoid irreparable harm to Plaintiff); Order, *Ziliang v. Noem, et al.*, No. 25-CV-1391 at *7 (D. Minn., April 17, 2025) (ordering Defendants to reinstate Plaintiff's SEVIS status backdated to April 8, and enjoining Defendants from detaining or deporting Plaintiff).

> "in order not to restrict a federal right unduly, the impact that a bond requirement would have on enforcement of the right should also be considered. One measure of the impact lies in a comparison of the positions of the applicant and the enjoined party. A bond requirement would have a greater adverse effect where the applicant is an individual and the enjoined party an institution that otherwise has some control over the applicant than where both parties are individuals or institutions."

*Id.* Here, an analysis of these factors clearly weighs in favor of waiving the bond requirement. Defendants will endure little harm, financial or otherwise, in the unlikely event that the TRO enjoining Defendants from terminating his SEVIS status is ultimately unlawful, whereas bond would impose substantial hardship on Plaintiff, a 20-year-old college student. Further, as discussed *supra*, Section C.II., Plaintiff is likely to succeed on the merits of his claim given the demonstrably arbitrary and capricious nature of Defendants' actions, which find no basis in federal law.

Finally, requiring that Plaintiff post security in order to avoid accumulating unlawful presence would evidently have a substantial impact on the enforcement of his rights. A "comparison of the positions" of Defendants and Plaintiff, *see Crowley,* 679 F.2d at 1000, shows Plaintiff to be in an evidently disadvantageous posture. Plaintiff, a young foreign national hoping to continue to pursue his studies at MIT, challenges the unlawful actions of the federal government of the United States, an institution that controls and limits his ability to enter and stay within its borders. This power disparity evidently lends itself to a much greater adverse effect on Plaintiff than on Defendants if he is required to pay a security in order to challenge the arbitrary termination of his SEVIS record.

As these factors overwhelmingly weigh in Plaintiff's favor, this Court should exercise its discretion to waive the bond requirement in Fed. R. Civ. Pro. 65(c).

### D.  RELIEF REQUESTED

Plaintiff prays that the Court enters an order restoring the status quo and requiring Defendants to take all action necessary to reverse the effects of their unlawful activity. Specifically, Plaintiff requests the following relief from the U.S. District Court:

A. Issue a TRO ordering Defendants to restore Plaintiff's SEVIS record to prevent ongoing harm to Plaintiff and enjoining Defendants from issuing a Notice to Appear in Removal Proceedings against Plaintiff and/or detaining Plaintiff pursuant to his immigration status, pending a hearing for a preliminary injunction or 5 U.S.C. § 705 stay; OR,

B. Consolidate a TRO hearing with a preliminary injunction hearing, and issue a preliminary injunction ordering Defendants to restore Plaintiff's SEVIS record to prevent ongoing harm to Plaintiff and enjoining Defendants from issuing a Notice to Appear in Removal Proceedings against Plaintiff and/or detaining Plaintiff pursuant to his immigration status; OR,

C. Postpone the effective date of Defendants' unlawful termination of Plaintiff's SEVIS record to preserve Plaintiff's legal immigration status and rights pending conclusion of APA proceedings "to the extent necessary to prevent irreparable injury" pursuant to 5 U.S.C. § 705, and enjoin Defendants from issuing a Notice to Appear in Removal Proceedings against Plaintiff and/or detaining Plaintiff pursuant to his immigration status; AND,

D. Grant Plaintiff any and all other relief this court deems equitable and just.

## CONCLUSION

Because Plaintiff is likely to succeed on the merits of his claim and will suffer irreparable harm in the absence of an injunction, including inability to graduate from MIT and accumulation

of unlawful presence, and because his continued presence in the United States would not have a negative effect on Defendants or on the public interest, this Court should grant a TRO under Fed. R. Civ. Pro. 65(b), a preliminary injunction under Fed. R. Civ. Pro. 65(a), or a stay under 5 U.S.C. § 705, on the revocation of his student visa and SEVIS record, and should further enjoin Defendants from issuing a Notice to Appear against Plaintiff and/or detaining him pursuant to his immigration status.

Respectfully Submitted,

S/ Kerry E. Doyle
Kerry E. Doyle, Esq.
MA Bar No. 565648
Attorney for Plaintiff
Green & Spiegel, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com

/S/ Stephen Antwine
Stephen Antwine, Esq.
PA Bar No. 309379
Attorney for Plaintiff
*Pro Hac Vice*
Green & Spiegel, LLC
1524 Delancey Street, Suite 4
Philadelphia, Pennsylvania 19101
Phone: (215) 395-8959
Fax: (215) 330-5311
santwine@gands-us.com